# United States District Court
# for the Southern District of Georgia
# Statesboro Division

```
CRIDER, INC.,                          :       CIVIL ACTION

        Plaintiff,                     :

           v.                          :

CONVENIENCE FOOD SYSTEMS,              :
INC., d/b/a CFS NORTH
AMERICA, INC., CFS BAKEL BV,           :
and CFS HOLDING BV,
successor to CFS Holding NV,           :

        Defendants.                    :       NO. CV604-102
```

### O R D E R

Plaintiff, Crider, Inc., filed this diversity action, against Defendants, Convenience Food Systems, Inc., d/b/a CFS North America, Inc., CFS Bakel BV, and CFS Holding BV, successor to CFS Holding NV, (collectively, "CFS"), alleging breach of contract and tort claims relating to the design, manufacture, and installation of processing and freezing equipment. Presently before the Court is Defendants' motion for summary judgment on Plaintiff's claim for lost profits and

other consequential damages. For the following reasons, Defendants' motion for partial summary judgment will be **DENIED**.

**FACTS**

In 1999, Crider made the decision to enter into a new business venture and expand its operations by installing an integrated cooking and freezing line at its Stillmore, Georgia, facility. After meeting with CFS sales representatives and executives numerous times, including several trips to Europe, Crider purchased an oven from CFS in May 2001. Later that year[1], Crider agreed to purchase an integrated line centered around the oven.

Following the parties' oral agreement for the purchase of the equipment, CFS sent Crider several documents, including Order Acknowledgment 70006A ("Acknowledgment A"), dated October 25, 2001. The document, designated as an order confirmation, included a damages exclusion, which provided:

> **Consequential Damages:** Convenience Food Systems Inc. will not be liable for and Customer hereby waives and releases any claims against Convenience Food Systems Inc. for any special, incidental, indirect, exemplary

---

[1] The exact date when the parties agreed on the purchase of the equipment at issue in the instant case is in dispute. Plaintiff asserts the parties entered into the agreement in September 2001. Defendants, in contrast, assert the parties entered into the agreement in July 2001.

2

or consequential damages, including lost sales, revenues or profit, loss or return of or damage to product, loss of facilities, inventory, work-in-process, or time and materials, or loss of prospective economic advantage, arising from any performance or failure to perform by Convenience Food Systems Inc. or its employees or subcontractors under this Agreement, or from the breach of any warranty hereunder.

Crider alleges that the equipment delivered by CFS did not perform as represented.  Crider began production in July 2003 and contends that mechanical defects were immediately apparent.  When attempts to correct the problems were unsuccessful, Crider shut down production in April 2004, replaced three pieces of CFS equipment with equipment from another manufacturer, and restarted production on July 5, 2004.  Crider contends that downtime caused by the allegedly defective equipment hampered its ability to negotiate additional sales with new and existing customers, and resulted in loss of significant business.

## DISCUSSION

I. **Summary Judgment Standard**

Summary judgment is appropriate when no genuine issues remain and the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In so doing, all facts and reasonable inferences are to be construed in favor of the

AO 72A
(Rev. 8/82)

non-moving party. See <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962); <u>Sweat v. Miller Brewing Co.</u>, 708 F.2d 655, 656 (11th Cir. 1983). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Walker v. Darby</u>, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Summary judgment must be granted if the nonmoving party has failed to make a sufficient showing on an "an essential element of [its] case with respect to which [it] has the burden of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

> [U]nsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.

<u>Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting <u>Hedberg v. Ind. Bell Tel. Co.</u>, 47 F.3d 928, 931-32 (7th Cir. 1995)) (emphasis in original).

4

## II. Consequential Damages

CFS argues that Acknowledgment A is the order confirmation for the parties' September 2001 purchase agreement.[2] Thus, according to CFS, it is entitled to summary judgment on Crider's claims for consequential damages pursuant to the exclusion contained in the order confirmation.

Crider, however, contends that Acknowledgment A was not part of the parties' agreement but, rather, one of numerous documents exchanged between the parties in negotiating the terms of the agreement. Crider further contends that even were the Court to determine that Acknowledgment A was a part of the parties' agreement, the consequential damages exclusion was ineffective under O.C.G.A. §§ 2-201 and 2-207. Finally, Crider contends that the tort claims are unaffected by the damage exclusion clause, and that the damages exclusion is unconscionable and causes the contract to fail of its essential purpose.

In a diversity case, the determination of damages constitutes a substantive issue. <u>McDermott v. Middle E. Carpet Co., Assoc.</u>, 811 F.2d 1422, 1426 (11th Cir. 1987). Georgia law,

---

[2] For purposes of the instant motion, CFS assumes Crider's position as to the date the parties entered into the agreement.

therefore, governs the issue of damages for lost profits. Under Georgia law, the parties to a contract are permitted to exclude consequential damages. O.C.G.A. § 11-2-719(3)[3]; <u>NEC Technologies, Inc. v. Nelson</u>, 267 Ga. 390, 390, 478 S.E.2d 769, 771 (1996) ("Georgia law expressly allows manufacturers of products to limit or exclude consequential damages."). The Court will not interfere with this right unless the result would be unconscionable. <u>Id.</u> The basic test for determining unconscionability is:

> [W]hether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.

<u>R. L. Kimsey Cotton Co., Inc. v. Ferguson</u>, 233 Ga. 962, 965, 214 S.E.2d 360, 363 (1975) (citations omitted).

The Court finds no evidence in the record to support Crider's assertion that the exclusion is unconscionable, or that the exclusion causes the agreement to fail as to its essential purpose. The Court does, however, conclude that

---

[3] O.C.G.A. § 11-2-719(3) provides that:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

genuine issues exist as to whether CFS and Crider's agreement included CFS' consequential damages exclusion.

Crider's position that Acknowledgment A was not the final expression of the parties' agreement is supported by the evidence in the record. Subsequent to preparation of Acknowledgment A on October 25, 2001, CFS prepared Order Acknowledgment No. 70006B ("Acknowledgment B") on February 18, 2002. It is Acknowledgment B, not Acknowledgment A, that CFS listed as documentation constituting part of its contract with Crider for the purchase of the subject equipment in its discovery responses. While Acknowledgment B may, in fact, contain an identical damage exclusion, CFS' failure to provide a copy of the document in the record precludes the Court from considering that evidence. Thus, viewing any disputed evidence in the light most favorable to Crider as the non-monvant, it is not clear from the record that the parties' agreement included the consequential damages exclusion. In light of the foregoing, the Court need not address the parties' remaining arguments relating to the consequential damages exclusion.

AO 72A
(Rev. 8/82)

### III. Lost Profits

CFS further argues that even were the Court to determine that Crider's claims for consequential damages were not barred, Crider has not offered sufficient admissible evidence to establish that it lost profits as a result of CFS' actions. Specifically, CFS contends that: (i) there is no adequate history of profitability on which to base a claim for lost profits; (ii) the lost profits claims are, instead, based on pure speculation; and (iii) there is no evidence demonstrating that any alleged losses were the result of any defect in the CFS equipment.

Georgia law provides that "[r]emote or consequential damages are not recoverable unless they are capable of exact computation . . . ." O.C.G.A. § 13-6-8. Although this rigid rule has been ameliorated somewhat by interpretation, "Georgia courts have shown reluctance in awarding lost profits to new business ventures[.]" McDermott, 811 F.2d at 1427 (citing Molly Pitcher Canning Co. v. Cent. of Ga. Ry. Co., 149 Ga. App. 5, 253 S.E.2d 392, 397 (1979)); Complete Concepts, Ltd. v. Gen. Handbag Corp., 880 F.2d 382, 390 (11th Cir. 1989); Radlo of Ga., Inc. v. Little, 129 Ga. App. 530, 199 S.E.2d 835, 838 (1973)).

8

AO 72A
(Rev. 8/82)

A party may recover lost profits "only if the business has a proven 'track record' of profitability." Empire Shoe Co. v. NICO Indus., Inc., 197 Ga. App. 411, 414, 398 S.E.2d 440, 443 (1990).

> Ordinarily, anticipated profits are too speculative to be recovered, "but where the business has been established, has made profits and there are definite, certain and reasonable data for their ascertainment, and such profits (were) in the contemplation of the parties at the time of the contract, they may be recovered . . . even though they can not be computed with exact mathematical certainty."

Authentic Architectural Millworks, Inc. v. SCM Group USA, Inc., 262 Ga. App. 826, 831-32, 586 S.E.2d 726, 731 (2003) (citing Mizell v. Spires, 146 Ga. App. 330, 332(2), 246 S.E.2d 385 (1978)); Empire Shoe Co., 197 Ga. App. at 413-14, 398 S.E.2d at 442-43; Grossberg v. Judson Gilmore Assocs., Inc., 196 Ga. App. 107, 108, 395 S.E.2d 592, 594 (1990); Brown Transp. Corp. v. Gunnell, 167 Ga. App. 833, 835, 307 S.E.2d 727, 729 (1983). A party need not "prove its damages to the exact dollar," but rather, must "provide some rational basis of computation." Tri-State Sys., Inc. v. Village Outlet Stores, Inc., 135 Ga. App. 81, 217 S.E.2d 399, 403 (1975). "Further, the losses must be directly traceable to the acts of the other party." Authentic Architectural Millworks, Inc., 262 Ga. App. at 832,

586 S.E.2d at 731 (citing Tri-State Sys., 135 Ga. App. at 84(2), 217 S.E.2d at 399).

The general rule as to the recoverability of lost profits as an item of damages that the expected profits of a commercial venture "are not recoverable as they are too speculative, remote, and uncertain[,]" relates especially to the cause, rather than to the measure of the amount, of damages. Molly Pitcher Canning Co., 149 Ga. App. at 10-11, 253 S.E.2d at 397-98. Thus, Georgia courts prohibit recovery for lost profits absent first establishing a "track record" of profitability. "That track record can be a history of profits, or a pattern of diminishing losses for a new business, so long as the evidence renders anticipated profits reasonably ascertainable." Roboserve, Ltd. v. Tom's Foods, Inc., 940 F.2d 1441 (11th Cir. 1991) (citing Stern's Gallery of Gifts, Inc. v. Corporate Property Investors, Inc., 176 Ga. App. 586, 592, 337 S.E.2d 29, 34-35 (1985)).

CFS argues that there is no adequate history of profitability on which to base a claim for lost profits because a track record cannot be established by a subsequent history of profits. This argument, however, is inconsistent with Georgia law. See McDermott v. Middle E. Carpet Co., 811 F.2d

10

1422 (11th Cir. 1987). In <u>McDermott</u>, the lost profit claims were predicated on an eight month delay in starting operations. On appeal, defendants argued that lost profits could not be based on a subsequent history of profitability. The Eleventh Circuit Court of Appeals, applying Georgia law, rejected the defendants' argument. The court found a track record of profitability demonstrating four years of consistently declining losses prior finally to turning profitable sufficient evidence to create a triable issue for a jury. <u>Id.</u> at 1428.

Crider has offered sufficient evidence upon which a jury could reasonably ascertain anticipated profits. Although the record during the initial five months after removal of the alleged defective CFS equipment showed markedly varied profitability, Crider has offered evidence indicating that it turned consistently profitable in December 2004.[4] The Court concludes that a pattern of consistent profits beginning in December 2004 is sufficient to establish a track record of profitability as contemplated by Georgia courts, thereby creating a triable issue.

---

[4] Due to Court deadlines, the record provides actual profits only through March 26, 2005.

11

CFS further argues that it is entitled to summary judgment because Crider has failed to offer evidence of causation. It is well established that a determination as to proximate cause is usually left to a jury and the court may make the determination as a matter of law only in plain and undisputed cases. Sanders v. Lull Intern., Inc., 411 F.3d 1266, 1271 (2005) (quoting Ontario Sewing Mach. v. Smith, 275 Ga. 683, 572 S.E.2d 533, 536 (2002)); Wabash Metal Products, Inc. v. AT Plastics Corp., 258 Ga. App. 884, 894, 575 S.E.2d 683, 689 (2002) (citing McAuley v. Wills, 251 Ga. 3, 7, 303 S.E.2d 258 (1983)); Construction Lender, Inc. v. Sutter, 228 Ga. App. 405, 408-09, 491 S.E.2d 853, 857 (1997). Furthermore, when making this determination, all facts and reasonable inferences are to be construed in favor of the non-moving party. See Diebold, Inc., 369 U.S. at 655, 82 S. Ct. at 993; Sweat, 708 F.2d at 656.

The Court concludes that Crider has offered sufficient evidence upon which a jury could find that CFS proximately caused its injuries. Specifically, Crider has offered evidence that shows its profits increased after removal of the allegedly defective equipment. Additionally, Max Harrell, Crider's designated representative pursuant to Federal Rule of Civil

Procedure 30(b)(6), and William Crider, III, testified that Crider lost a commitment with Gold Kist and was unable to pursue numerous other customers due solely to the allegedly defective CFS equipment. This evidence, construed in favor of Crider as the non-moving party, creates a genuine issue as to whether CFS' conduct was the proximate cause of Crider's injuries, thereby precluding summary judgment.

## CONCLUSION

The Court has read and considered the positions of all parties to this action. For the reasons set forth above, Defendants' motion seeking summary judgment on Plaintiff's claim for lost profits and other consequential damages (Doc. No. 57) is **DENIED**.

**SO ORDERED**, this _2nd_ day of December, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)